Good morning, Your Honor. May it please the Court, Michael Harwin, on behalf of Appellant. I would like to try to reserve five minutes for rebuttal. First, the facts. Is it a factual matter Judge Marquez intended to eliminate the conviction for immigration purposes? Well, if he had, why didn't he just do it? I mean, his order could not be clearer. It says that he's a judge guilty, and his probation is – I mean, his incarceration sentence is wiped out, and in lieu of it, a sentence of probation is imposed. But it couldn't have been more clearly written. And nobody ever asked him to discharge probation unconditionally. So I don't know how you get a factual basis for supposing that he intended something which you plainly didn't say. If I may, Judge McKeown. I'm flattered, but does Judge Reimer? Well, that's always a bad way to start. But that's a first, because we've never been confused before. And I'm happy to be Judge Reimer for a while. The petition for Corp Nobis maybe wasn't the most exacting petition in 1984. But the – but there was no other purpose for it. I mean, the petition itself specified it was for immigration purposes. There would be no valid reason for Judge Marcus to have granted it other than for the consequences. Okay. Then how come there was no squawk at the time? I'm not sure that there wasn't a squawk. We tried to get the record. All we could find at this point was the minute entry. I mean, we tried to get the transcript of proceedings. But it's long gone. This is 26 years later. In our view, it's sort of the opposite of the question you're asking me. There couldn't have been any other plausible explanation other than that he intended – Judge Marcus intended to grant the petition for Corp Nobis, vacate the conviction sentence him under the FYCA, the Federal Youth Corrections Act, and he failed to discharge him before the termination, the expiration of probation under, what is it, 18 U.S.C. 5021B. There's no other plausible explanation for what was done. And I concede to you that the record is incomplete after 26 years. Well, see, the one plausible explanation is that nobody explained to him what was happening, because this whole immigration collateral consequences, even today, as you know, is not all that clear in the court. So it's possible that it wasn't really explained to him what needed to be done. He could have been under some misapprehension about how the Youth Corrections Act worked. There's a whole host of things. The problem is we just don't know. So the question I have is, assuming that you're right, that he just goofed up somehow, you knew what you had, but at least after, you know, up to 2002, maybe there was some uncertainty. But after that, when they basically deny the application and then your client doesn't do anything, he knows at that point that he has a problem. So would you address the time issue? Yes. I think that's a relatively easy one to address. It wasn't until 2006 when the government put him into removal proceedings, and they filed a position paper. And the position was that this wasn't an effective expungement or set-aside under the FYCA. So the immigration attorney at the time forwarded the file to me, and we immediately, within a matter of months, and I don't think there's any dispute about this, filed a motion to clarify the sentence. So you didn't get involved until 2006? It was probably the end of 2006. Okay. But I'm concerned because obviously you knew what to do with this information, but why in 2002 when they deny the application? That's basically a huge red flag of you have, you know, you have this conviction and you're not getting the relief you want, and the government just says, you know, you're out of luck. So why isn't that the point at which we should look to see that he should have done something? Okay. That's a fair question. And I think there's – I think the best answer is, although it may have been a red flag, I don't know whose immigration attorney was at the time. It may have been the same one. The government didn't take the position that this misdemeanor marijuana conviction wasn't set aside until 2006. Nobody was going to do it. What was the reason that he didn't get – why did he get denied his application? You know, Judge, and I want to be honest with you, it may have been this and it may have not. I don't – I'm not certain. But the government never took that position. But if I may add as well, there's jurisdiction under 3231. I mean, I think the case law is clear. Sumner makes it clear that there's ancillary jurisdiction to correct judgments. There's also separate jurisdiction under the FYCA. So we don't have to – I believe that we can reach other merits without treating it as a quorum nobis matter. So I understand that you're asking the question because there seems that there's undue delay, but I don't think it's relevant. And I honestly think that the immigration attorney, as soon as it was clear the immigration attorney was going to have to set aside. Well, okay, so here's what the government says. They say he's an alien who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker in any such controlled substance. So are you saying – I mean, he's basically told that because of prior drug issues, he can't get this relief. Is this all irrelevant because he wouldn't get it anyway because of these other convictions, or what is it? I don't know. I mean, based on my practice, and Judge Burry in his first minute entry pointed out that the finding by the immigration adjudicator was incongruous with the actual conviction, which was misdemeanor simple possession. But my understanding of the adjudication of the petitions, the I-130s to become a legal permanent resident, the government has a lot of discretion. Some of it's appealable, some of it's not. It's not adjudicated before an immigration judge. It's an adjudicator. It's an officer. An INS, yeah. So that didn't put anybody on notice as to their position on whether this is expunged or not. A conviction is not necessary for them to meet the reason-to-believe standard. That's the one I'm positive of. Any other questions? If you'd like to say that. Oh. If, yes. If it had been brought up in 2002, wouldn't the same problem then face as to whether it could go back, as to whether you could go back and do something about the sentence? I don't see that there would be any difference between 2002 and 2006. I think there was an ancillary jurisdiction under Sumner and under the FYCA then to correct it. Okay. Thank you, Judge Hogan. Okay. Thank you, Mr. Stanley. Mr. Ferg. May it please the Court. My name is Bruce Ferg, Assistant United States Attorney on behalf of the government. The government's position is that the defendant is coming to you asking for what is extraordinary relief by means of quorum nobis for basically three alleged errors, none of which, in fact, were errors. We start back with the original sentencing in 1974, and his whole claim is based on the idea that there was a Dorzinski error, that there should have been a finding made that he was, as a juvenile, amenable to treatment and so forth or not. The problem is that Dorzinski was actually decided one week after he was sentenced, and this Court decided in a case called Bohorquez v. Agrana that Dorzinski is not So basically, even the action that was done with regard to his sentence was inappropriate. He was not illegally sentenced. He was sentenced properly under the law at the time, which basically was, no, you don't have to make that kind of a determination. But regardless of that, when we come to Judge Marquez, the allegation is that somehow without ever saying so and without ever being prompted by the defendant who was represented by counsel and filed a written counsel file petition, Judge Marquez was supposed to know that what I really want is to have my conviction vacated, not just the sentencing changed, which is what I asked for. The problem with that is that Judge Brey, in the most recent proceedings, made specific findings of fact that, in fact, Judge Marquez did not overlook it, that this failure to vacate the conviction was not inadvertent. He sent the defendant was simply given exactly what he asked for. So to dragoon the district court into becoming an advocate. Well, what was the whole purpose of Judge Marquez doing that at all? Well, the defendant's petition to Judge Marquez suggested that he thought that having his sentence changed, which is all he asked for, would somehow improve his chances in the then-ongoing immigration proceedings on the civil side. But the bottom line is, all he said is, Judge, please change my sentence. And Judge Marquez, being asked to change his sentence, did so. There is never any reference back to the terms of the act, which requires a specific vacation of the conviction in order for that to go away. There's no doubt it was done wrong. But what bothers me is the whole purpose of Judge Marquez going through all this and revising the sentence and giving the probation and so forth was to avoid this problem with the immigration. What other purpose was there? That's what the defendant said. But it raises two questions. First of all, is the district court judge presented with a petition now supposed to become a second echelon advocate for the defendant and say, oh, is that really what you want, or should I be giving you something else? And, again, basically what we're being asked, you are being asked to do, is to speculate about what was in Judge Marquez's mind when Judge Bury made findings which are reviewable only for clear error, that, in fact, it was not an inadvertent omission, that this was simply what he was asked to do, and he did it, and there was no inadvertent error. Could I ask you about that? It's like you've intimated that we kind of have layer upon layer here, but when the district court is looking at this, how can it really make what we would call findings of fact when it's really just looking at the documents and deciding what the legal import of those is? Why isn't that really either a mixed finding, which doesn't get reviewed for clear error, or even more in the nature of a legal finding? Because I think what we're talking about is kind of a traditional, almost a jury question, what was the intent of the person? What was Judge Marquez's intent in drafting the order that he did? And that's a paradigm of a factual finding. Now, obviously he had to do it on the basis only of the written records, but, again, if there's any problem there, it's because the defendant was so tardy in bringing this up. He says, oh, I can't show you. Well, why couldn't he show you? He was convicted and served his term in 1974, then he was immediately deported in 1975 as soon as he got out of custody. And so if he thought that there was some kind of problem, oh, obviously my prior conviction is affecting my immigration status, then he immediately had an incentive at that time to attack it. But what did he do? He waited until 1983 after Judge Frye was long gone from the bench. There were hardly any records to be found. And so, again, because quorum nobis is a proceeding in equity, the petitioner must do equity. And that means that he must act appropriately and promptly or, as I pointed out in my testimony, there are good reasons why he did not proceed at a time when more traditional means of relief are available. He has not given up. Speaking of being tardy. Yes, sir. Why was it that Ice took so long to institute this proceeding after he'd been there all these years? I can't tell you that. I've not seen the A file, and so I'm not at all familiar with the civil proceedings or why things happened as they did. Are you saying basically that when he gets deported in 1975, he says in his brief that it was because of this conviction? That's right. Then he should have been unnoticed that there was a problem at that time. Absolutely. To do something. And we understand from the record that he came back after 1975 and was caught again, so certainly he had an incentive to act promptly. And this kind of goes also to this whole question of ancillary jurisdiction. First of all, that is an argument that was never presented in any of the proceedings below, and Mr. Harwin specifically represented in his pleadings that quorum nobis was the only available remedy. So he certainly should not be coming here now and saying, oh, let's go back and look at ancillary jurisdiction or Sumner, which, by the way, only applies if there is an invalid conviction. And again, there is no invalidity in the conviction. The conviction was and always has been good. So basically he's saying now, come back and give me the remedy of invalidating my conviction so I have better standing with the immigration people when there has never been an error that affects the conviction. To the extent that even there is a Dorzynski error, this Court has found that goes, yes, potentially to the sentencing, but nothing else. And so to come now and kind of leapfrog back and say, well, it was too bad that I received a valid conviction and I didn't persuade Judge Marquez to overturn that, is this really the kind of situation for which quorum nobis is designed? In Morgan, the Supreme Court made clear that this is truly an extraordinary remedy and that is only to be applied when there is a real manifest injustice to be corrected. What is the manifest injustice? His conviction was good. He came in one time, said this is a relief I want. It was given to him exactly as he asked for. He has waited 30 years to try and go back again and now complains about the lack of record. There simply is no good reason. The Court's case law shows, says that if you want quorum nobis and you delay and you delay and you delay, you have to give a good reason. And not just that you weren't motivated or you didn't see the purpose, but that there was something outside. All the cases indicate some kind of constraint situation where the person was so incarcerated that they couldn't have access to records or other things outside themselves. It wasn't just, well, maybe I'll play along the oil people and the immigration people on this side and then I'll go over here to the criminal side and see if I can get some quorum nobis relief and then kind of go back and forth. Because that certainly is, at least recently, what had been happening. With the fact that it had taken so long for Immigration Service to bring any sort of action, be an indication to him to sort of accept the idea that this really was the intent of Judge Marquez? I don't think that's something that he could reasonably do because he's reading into the mind of administrative organization or administrative branch something that was never articulated by Judge Marquez, never suggested. Even this Court's cases about estoppel by government action make clear that there has to be some affirmative representation to the person that he can rely on. Yes, we're making you an agent. No, you don't have to fill out that paperwork. And there was nothing like that. So there simply is no equitable basis for judgment. My frustration is that the Immigration Service takes on this kind of a case with all of the problems that immigration has with various people that are legitimately deportable and take this on at this stage to, after all these years, to deport somebody who had, it seems to me, had Judge Marquez's intent, really only sensible intent he had, was to remedy the immigration problem. Again, Your Honor, I can't speak for immigration. But quorum nobis, the findings hold. Who do you speak for? I'm speaking basically for the United States Attorney's Office dealing with the criminal side of which he is trying to get a conviction vacated in which there is no defect. Okay. Thank you, Mr. Ferg. Mr. Harwin. Thank you. My colleague is wrong about a number of things. First of all, I filed the motion as a motion to clarify sentence. And in the alternative, a petition for root of quorum nobis, I invoke ancillary jurisdiction and jurisdiction under the FYCA from the outset. Secondly, you know, as Judge Huggs pointed out, this gentleman has been here for 40 years. Well, so what? I mean, the problem is Marquez's order just absolutely in clear, unmistakable words says he is a judge convicted. If that were wrong or inconsistent with either your clients or Judge Marquez's intent or purpose in that whole proceeding, it was there. There's no ambiguity about it. So the 40 years applies to that, too. I mean, it's not quite 40 in that case. It's more like 30. But the point being that has been just unmistakably clear all this time. If I may, Your Honor, I mean, I've got the order right here in front of me. Yes. And it says, Yes, and keep on reading. I'm with you on that. And so he's adjudged and convicted of a misdemeanor. Yes. He is adjudged convicted. I mean, there's no other meaning to that phrase than adjudged convicted. Then he goes on to change the sentence. He changes the sentence from 120 days to 100 non-pro time. 120 days incarcerated to 100 days of probation, which is really quite different if you've got to be the one to spend 120 days in jail. Well, it's so far after the fact. He's already spent it at the Florence War Camp. There's no reason. I mean, my point is that there is no reason to do this other than for the immigration consequences. That's what quorum nobis does. It's about the consequences. So the fact that he changes it from 120 days in Florence War Camp to 100 days probation non-pro time is meaningless because he's already served the sentence unless he's trying to avoid the consequences. And the petition for it at quorum nobis. He's represented by counsel at that point? He's represented by a counsel named Leon Feigl. I mean, here's a petition, and he puts in the petition, the motion is presented because the defendant has appeared before an immigration judge. So he's clearly trying. I mean, maybe it's not the most artful petition or artful order, but there's no other plausible explanation. In fact, the government concedes that in footnote 6 of its brief, that the only reason they're going there on quorum is to avoid the immigration consequences. The government has conceded that. Well, you know, the law is really obscure on that. Sometimes the immigration consequences hinge on a period in custody, or whether it's one year or two years or whatever. It can depend upon a ton of different things. So Judge Marquez is asked to do something. He does it. He thinks he's done what the defendant wanted to have done. He does, Judge Reimer, but he's left out the term, you know, unconditionally discharged from probation before the term is up. And we think it's inadvertent because there could be no other plausible explanation of the law. Well, maybe it was inadvertent that counsel didn't ask for it. But I don't understand how you could say a Federal judge was inadvertent in not granting some kind of relief that he wasn't asked to grant. I mean, we're not clairvoyant. I agree that nobody's clairvoyant that I know, at least in the area of law. However, there's no other plausible intent here other than to do exactly that, Judge. I mean, I see the clock. It's way over. It's way over. Way over. And I appreciate you giving me the time. I do have one other question. As I understand it, in order to grant a certificate relieving, it has to be the motion that has to be made before the probation is up? My understanding is that under Dabrinsky, it can be done non-protonque after the fact, which was done here. You're talking about? My problem is that, the non-protonque. The fact that the probation was done non-protonque makes it impossible for him to have brought that motion during the time of the probation, because probation is over. Judge, that's exactly right. The case, Dabrinsky, the U.S. Supreme Court case, made it possible to bring those motions after the fact to correct error, and Judge Marcus had granted it. So it was legal to do. The government didn't object then that it was illegal. They could have appealed it, but they didn't. Does that answer your question? Yes. Thank you very much. Okay, thank you, counsel. The matter just argued will be submitted.
judges: Hug, Rymer, McKeown